Approved: _____
SAMUEL P. ROTHSCHILD/ANDREW THOMAS
Assistant United States Attorneys

Before:   THE HONORABLE JAMES L. COTT
          United States Magistrate Judge
          Southern District of New York

**22 MAG 3884**

- - - - - - - - - - - - - - - - x
                                 :   **SEALED COMPLAINT**
UNITED STATES OF AMERICA         :
                                 :   Violations of
     v.                          :   18 U.S.C. §§ 1348 & 2
                                 :
DAVID STONE,                     :   COUNTY OF OFFENSE:
                                 :   NEW YORK
          Defendant.             :
                                 :
- - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

   FLYNN McFADDEN, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation (the "FBI") and charges as follows:

### COUNT ONE
(Securities Fraud)

   1.   From in or about 2020 up to and including in or about 2022, in the Southern District of New York and elsewhere, DAVID STONE, the defendant, knowingly and intentionally executed, and attempted to execute, a scheme and artifice to (a) defraud persons in connection with securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, and (b) obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, to wit, STONE, without authority, accessed and misappropriated pre-publication stock recommendations of investment recommendation services and converted that

information to his own use by trading on it and by distributing it to others for their trading.

(Title 18, United States Code, Sections 1348 and 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

2.   I am a Special Agent with the FBI and have been since approximately 2020. I am currently assigned to a squad in the FBI's New York Field Office that investigates complex financial crimes, including crimes involving securities fraud through insider trading and wire fraud. During my tenure with the FBI, I have participated in the investigations of numerous frauds and have conducted physical and electronic surveillance, the execution of search warrants (including warrants to search electronic accounts, such as email accounts, and electronic devices such as cellphones and computers), debriefings of informants, reviews of taped conversations and electronic communications such as emails and text messages, and arrests. Through my training, education, and experience, I have become familiar with the manner in which securities frauds, such as insider trading, and wire frauds are perpetrated.

3.   The information contained in this Complaint is based upon my personal knowledge, as well as information obtained during this investigation, directly or indirectly, from other sources, including, but not limited to: (a) business records; (b) correspondence and electronic communications, including emails obtained from search warrants; (c) Internet Protocol logs;(d) bank and brokerage records; (e) conversations with other federal law enforcement officers; and (f) information supplied by the U.S. Securities and Exchange Commission (the "SEC"). Because this Complaint is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions and statements of and conversations with others are reported herein, they are reported in substance and in part. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

## Background

4.   The United States Attorney's Office for the Southern District of New York and the FBI have been investigating an insider trading ring (the "Insider Trading Ring") that appears to exploit

market-moving stock recommendations made by investment recommendation services offered by a company ("Advisor-1") before those recommendations are released to subscribers of those services. In particular, and as described below, DAVID STONE, the defendant, appears to be extracting confidential information from Advisor-1 through unauthorized access to Advisor-1's computing system, using that information to trade, and distributing that information to others for their trading.

5. Based on my review of Advisor-1's website, I have learned that Advisor-1 is an investing advice company that provides investment guidance to investors. Advisor-1 offers membership services, which members must pay to use, including two particular services ("Service-1" and "Service-2"), which purport to provide market-beating stock recommendations.

6. Based on my review of emails sent from Advisor-1 to subscribers of Service-1 and Service-2, as well as conversations with a representative of Advisor-1, I have learned, in part, the following:

   a. Through its premium services, such as Service-1 and Service-2, Advisor-1 makes stock recommendations that are available only to subscribers of those services.

   b. For Service-1, for example, employees of Advisor-1 typically announce those stock recommendations by newsletter or during online livestream events on particular Thursdays at approximately 1pm Eastern time. Approximately one hour before a live stream event, Advisor-1 emails Service-1 members a link to join the broadcast. Additionally, shortly after the livestream, Advisor-1 both sends Service-1 members an email setting forth the stock recommendations and posts the stock recommendations on part of Advisor-1's website that only members can access.

   c. Prior to the dissemination of Advisor-1's stock recommendations to its subscribers, Advisor-1 considers those recommendations to be confidential and takes steps to keep those forthcoming recommendations confidential. Relatedly, Advisor-1 takes steps to prohibit employees of Advisor-1 from trading in securities underlying forthcoming recommendations.

7. Based on an analysis of stock-price movements between on or about November 12, 2020 and April 21, 2022 conducted by the SEC, I have learned that Advisor-1's stock recommendations typically, but not always, lead to higher closing prices for the recommended stock as compared to the prior day's closing price. For example, on or about August 26, 2021, Advisor-1 recommended

CrowdStrike Holdings, Inc., which trades on NASDAQ under the "CRWD" ticker symbol. On the day prior to the announcement, CRWD closed at $270.00; on the day of the announcement, CRWD closed at $278.77 — a 3.25% increase. On occasion, recommended stocks have experienced price increases of more than 7% or 8% as compared to the prior day's closing price.

### DAVID STONE has Unauthorized Access to Advisor-1

8. Based on a review of email correspondence to and from an email account (the "STONE Email Account"), subscribed to in the name "David Stone" and associated with a particular phone number (the "STONE Phone Number"), as well as a review of bank records and bank account opening documents, it appears that STONE is an information technology ("IT") professional who, among other things, provides IT support for small businesses via remote access to their computing systems.

9. Based on my review of brokerage records, I have learned that on or about November 23, 2020, a brokerage account registered in STONE's name and associated with the STONE Email Account and the STONE Phone Number ("STONE Brokerage Account-1") was accessed via a particular Internet Protocol address ("IP Address-1").[1]

10. Based on information from Advisor-1, I have learned, in part, the following:

    a. IP Address-1 belongs to Advisor-1.

    b. Advisor-1 does not have a record of having granted DAVID STONE, the defendant, access to its computing system.

11. Based on my review of a record from the STONE Email Account's service provider (the "Record"), I have learned that the STONE Email Account has been accessed via various Internet Protocol addresses. Some of the Record's entries list not only an "IP Address," but also a "Proxiedhost IP Address."[2] All such entries are from on or about March 9, 2022 up to and including on or about March 30, 2022. In any instance where a "Proxiedhost IP Address"

---

[1] Based on my training and experience, I know that an Internet Protocol address (or "IP Address") is a numerical label assigned to each device participating in a computer network that uses the Internet Protocol for communication.

[2] Based on my training and experience, I know that a "proxy IP address" can refer to an IP address that effectively shields a user's true IP address.

is listed, it is always the same IP Address—namely, IP Address-1.

12. Based on those IP address logs, my training and experience, and my conversations with other law enforcement officers specializing in cyber intrusions, I believe that the IP address information described above reflects that DAVID STONE, the defendant, obtained access to the Advisor-1's computing system assigned IP Address-1 and, at certain times, while accessing Advisor-1's computing system, logged into his own brokerage and email accounts.

13. Further, based on a review of emails sent by DAVID STONE, the defendant, to a particular individual ("Tipee-1") at an email account (the "Tipee-1 Email Account") subscribed to in the name of Tipee-1 and associated with a particular phone number (the "Tipee-1 Phone Number"), I know that STONE has remarked upon limitations on his ability to access information from Advisor-1 before its publication. For example:

    a. On or about February 3, 2021, STONE sent Tipee-1 an email that stated, in part: "Looks like tomorrow's update is in video form which means I can't see what is in ahead of time. Not sure how often they will do it but so far 1//4 updates this year have been this way."

    b. On or about April 14, 2021, STONE sent Tipee-1 an email that stated, in part: "Buy The Toro Company TTC. It'll be another video announcement but I can still see it should be for TTC. Sometimes I can't tell but this time I can."

    c. On or about May 19, 2021, STONE sent Tipee-1 an email that stated, in part, "Tomorrow the [Service-1] rec is Amazon (AMZN). It seems I can reliably see the third thursday recs the rest are hit and miss."

14. Based on the foregoing, I believe that DAVID STONE, the defendant, has accessed Advisor-1's computing system, has done so without lawful authority, and his references to being able to "see" certain information, and not being able to "see" other information (in particular, information in "video form") refer to the fact that STONE's method of access has enabled him to view certain pre-publication information but not all of Advisor-1's information.

**DAVID STONE Alerts Tipee-1 to Pre-Publication Information**

15. Based on a review of emails obtained pursuant to a search warrant, I have learned the following:

5

   a. On or about January 16, 2021, DAVID STONE, the defendant, using the STONE Email Account, sent an email to Tipee-1 that included the following:

> I'm ok with sharing the weekly trades with you. I have used it so far to generate a significant amount of money and I'm sure you will be able to as well. There is a small possibility that what we are doing could be considered insider trading. [Advisor-1] uses only public information about to make its recommendations and even the recommendations are behind a paywall so it is a stretch to call it insider trading but it certainly behaves like it because it almost guarantees favorable price moves at a certain time.
>
> So with that in mind these are the guidelines I am following:
>
> . . . .
>
> * Purchase a [Service-1] subscription from [Advisor-1] . . . and open some long term position of some of the recommendation that appeal to you
>
> * Do other trades besides just what I tell you. If all your trades are up 5x and you never make a loosing trade it may call attention of regulators. . . .
>
> * Pay your taxes. These trades are short term capital gains and are taxed at your regular income tax rate. You may get a significant tax bill come April 15 2022.
>
> * Pay your tithe. This extra income has been a subject of regular prayer for me. I anticipate I will not need to keep my regular job for long when we are on the mission field. I have opened a donor advised fund which make it easy to contribute large sums of money or stocks directly and then schedule donations to be made to my church and any other charity I choose. It makes it easier to make anonymous donations as well which I feel is important.

>           . . . .
>
>           With these guidelines in place I can email the recommendations as soon as I know. I feel [a particular email provider] will be a more secure form of communication if it works for you.

b. Between on or about January 20, 2021 up to and including on or about March 17, 2022, on approximately 45 different days, STONE sent emails to Tipee-1 providing stock names and/or ticker symbols ahead of Advisor-1 announcements of stock recommendations to its paying subscribers.

### DAVID STONE Uses Pre-Publication Information to Trade and Cause Others to Trade

16. By comparing trading records to Advisor-1 stock recommendations, I have learned that DAVID STONE, the defendant, Tipee-1, and others have repeatedly engaged in trading activity relating to Advisor-1 stock recommendations shortly before Advisor-1 announced those recommendations to its paying members.

17. Based on my review of brokerage records, I have learned that DAVID STONE, the defendant, and the Insider Trading Ring often use financial instruments known as "call options" or "calls." From my experience, I have learned that call options are financial contracts that give the option holder the right but not the obligation to buy a stock, bond, commodity, or other asset or instrument at a specified price within a specified time period. The stock, bond, or commodity is known as the "underlying asset." The specified price is known as the "strike price." For call options, the strike price is where the underlying asset can be bought by the option holder. The end of the specified time period is known as the "expiration date," which is the last day that the option contract is valid. A call holder may profit when the underlying asset increases in price before the end of the expiration date.

18. For example, based on my review of emails sent from Advisor-1 to Service-1 members, I have learned that, on or about Thursday, September 16, 2021, Advisor-1 recommended that Service-1 members buy stock issued by Asana, Inc., which trades on the New York Stock Exchange under ticker symbol "ASAN." Based on the process described above, I believe that during a livestream that began at approximately 1:00 p.m. Eastern time on or about September 16, 2021, employees of Advisor-1 announced the ASAN recommendation, and, at approximately 1:22 p.m. Eastern time that

day, Advisor-1 sent Service-1 members an email recommending that Service-1 members "Buy Asana." Based on my review of publicly available information online, I have learned that the opening price of Asana stock on September 16, 2021 was $109, and the closing price was $117.86. The increase in price may be attributable in part to the announcement of Advisor-1's recommendation.

19. Based on a review of email correspondence, brokerage records, and public stock-price information, I have learned that DAVID STONE, the defendant, learned of the ASAN recommendation in advance of its publication, profitably traded in ASAN, and provided the pre-publication information to Tipee-1, who also profitably traded. For example:

    a. On or about September 15, 2021, the day before Advisor-1 announced the ASAN recommendation, DAVID STONE, the defendant, sent an email to Tipee-1 that said, among other things, "Buy Asana."

    b. On or about September 16, 2021, in the hours leading up to Advisor-1's announcement of the ASAN recommendation, a brokerage account registered in Tipee-1's name and associated with the Tipee-1 Email Account and the Tipee-1 Phone Number (the "Tipee-1 Brokerage Account"), conducted multiple purchases of securities related to Asana stock, including for over approximately one thousand September 17, 2021 call options for Asana stock with strike prices ranging from approximately $115 to $125, as well as approximately one hundred shares of Asana stock. Additionally, on or about September 16, 2021 from approximately 12:09pm to approximately 12:11pm Central time, that is, from approximately 1:09pm to approximately 1:11pm Eastern time (that is, after Advisor-1 would have begun the livestream during which it would have announced its ASAN recommendation), the Tipee-1 Brokerage Account sold over approximately one thousand September 17, 2021 call options for Asana stock with strike prices ranging from approximately $115 to $125. On or about September 21, 2021, the Tipee-1 Brokerage Account sold approximately fifty shares of Asana stock.

    c. Similarly, on or about September 16, 2021, beginning approximately three-and-a-half hours before Advisor-1 announced its ASAN recommendation, a brokerage account registered in STONE's name and associated with the STONE Email Account and the STONE Phone Number ("STONE Brokerage Account-2"), bought for approximately $7,568.22 approximately one hundred September 17, 2021 call options for Asana stock with an approximately $115 strike price (that is, approximately $6 above the opening price). Then, beginning at approximately 1:19pm Eastern time, after the start of

the livestream in which Advisor-1 announced the ASAN recommendation and around the time that Advisor-1 sent Service-1 members an email setting forth the ASAN recommendation, STONE Brokerage Account-2 sold for approximately $27,001.86 approximately one hundred twenty-nine September 17, 2021 call options for Asana stock with an approximately $115 strike price. (On or about September 16, 2021 at approximately 5:01pm Eastern time, STONE Brokerage Account-2 bought for approximately $2,339.78 approximately twenty-nine September 17, 2021 call options for Asana stock with an approximately $115 strike price.)

d. Also on or about September 16, 2021, beginning approximately two-and-a-half hours before Advisor-1 announced its ASAN recommendation, a different brokerage account registered in STONE's name and associated with the STONE Email Account and the STONE Phone Number ("STONE Brokerage Account-3"), bought several September 17, 2021 call options for Asana stock with an approximately $115 strike price.

20. Based on publicly available stock-price information, I know that following Advisor-1's recommendation, ASAN closed approximately 7.81% higher than it had the day before. STONE's and Tipee-1's pre-recommendation trading enabled them to each make hundreds of thousands of dollars in profits. Specifically, based on a review of brokerage records for the Tipee-1 Brokerage Account, STONE Brokerage Account-2, and STONE Brokerage Account-3, as well as a review of preliminary trading analysis conducted by the SEC, I have learned that Tipee-1's and STONE's transactions before and after the ASAN recommendation generated approximately $126,495 and $104,272, respectively, in gross trading gains as represented by the sum of the value of Tipee-1's and STONE's trading positions as of the closing price on the day the recommendation became public.

21. The ASAN trading pattern is just one of multiple examples of DAVID STONE, the defendant, Tipee-1, and others connected to them trading in securities related to stocks recommended by Advisor-1 shortly before Advisor-1 recommendations were announced to Advisor-1's paying members. Based on my review of brokerage records, information that Advisor-1 made available to members of Service-1, a review of a preliminary trade analysis prepared by the SEC, as well as my conversations with other law enforcement personnel, I have learned the following, in substance and in part:

a. Since in or about November 2020, brokerage accounts associated with STONE, including STONE Brokerage Account-2 and STONE Brokerage Account-3, have traded ahead of Advisor-1 recommendations on more than a dozen occasions. As a result of that trading, STONE has profited over approximately $3 million.

      b.  Since in or about January 2021, the Tipee-1 Brokerage Account has traded ahead of Advisor-1 recommendations on more than a dozen occasions. As a result of that trading, Tipee-1 has profited more than approximately $2.7 million.

      c.  On multiple occasions, STONE and Tipee-1 have traded in stocks listed on national securities exchanges located in Manhattan, New York, such as the New York Stock Exchange and NASDAQ.

WHEREFORE, I respectfully request that an arrest warrant be issued for DAVID STONE, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

/s/ Flynn McFadden, by the Court, with permission
_____
Special Agent Flynn McFadden
Federal Bureau of Investigation

Sworn to me through the transmission
of this Complaint by reliable electronic
means, pursuant to Fed. R. Crim. P. 41(d)(3), this
29th day of April, 2022

_____
JAMES L. COTT
United States Magistrate Judge